## Case No. 10,415.

### The OCEANUS.

[12 Blatchf. 430.] [1]

Circuit Court, S. D. New York. Jan. 30. 1875.[2]

COLLISION—OVERTAKING VESSELS.

1. An overtaking vessel is not absolutely prohibited from passing the vessel she is overtaking, but she must see to it that she selects a time and

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 10,414.]

place in which she can pass safely, if the other does nothing to thwart her endeavor.

[Cited in The Charles Morgan, 6 Fed. 914.]

2. Two steamers, the N. and the O., were on parallel courses going down a river, the O. being nearer the shore on the left hand of both of them, and both were to turn to the left to continue their proper voyages, the destination of each being known to the other. Before turning, the O. was a little ahead. The N. was the faster boat. The O. reached the point of turning before the N. reached the line of the beam of the O. The N. drew in on the course of the O., on a curve crossing the bow of the O. A collision ensued, in which the N. was damaged. She libelled the O. *Held*, that the N. was solely in fault.

3. Even if the N. had been slightly ahead, when she began her curve, she had no right to turn in on the course of the O. until she could cross the bow of the O. without collision, if the O. did nothing to prevent it.

4. In passing along concentric or nearly concentric curves, with a proximately common purpose or destination, one vessel has no right to cross the bow of the other unnecessarily, and so place the latter in danger.

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel by the owners of the Newport to recover damages sustained by reason of a collision with the steam propeller Oceanus. From a decree of the district court dismissing the libel (Case No. 10,414), libellants appeal.]

William G. Choate, for libellants.

Robert D. Benedict, for claimants.

WOODRUFF, Circuit Judge. The testimony herein is voluminous and greatly conflicting. After a painstaking examination of the whole, I am of opinion that the conflict results mainly from the difference in the position of the different witnesses, and the consequent difference in the view presented to their eyes, and not from intentional misrepresentation; and I think that the important and decisive facts are established without great doubt or uncertainty.

The libellants' steamboat, the Newport, left the upper side of her wharf in the North river, at about 4 o'clock in the afternoon of the 27th of November, 1867, for her voyage to Newport, which required her to pass around the lower extremity of the city, and pass between Governor's Island and the Battery, to enter and go up the East river. She went from her wharf, out into the North river, a considerable distance, before making a turn down on her course. The propeller Oceanus, lying at the south side of her wharf on the North river, 320 feet lower down than the berth of the Newport, left her wharf almost immediately after the Newport got out of her slip, and, instead of going out into the river to the westward, she swung at once around, headed down the river near the ends of the docks, and proceeded on her voyage around the lower extremity of the city, to enter and pass up the East river. Each vessel was, therefore, aiming to describe a curve around

the Battery, to pass up the East river. The Newport, having passed out into the North river much further than the other, had the largest curve to describe, and the greater distance to go before entering the East river. She was, however, the fastest boat. The Oceanus passed down as near to the Battery shore as it was prudent to pass, avoiding, and barely avoiding, other vessels lying at anchor there; and, when she was within a short distance of the Staten Island ferry, she came in collision with the Newport, which had drawn around near to the course of the Oceanus, and, at the moment of collision, had her bow slightly in advance of the latter, so that she received the blow in her wheelhouse just abaft her shaft. The question, which of the two was, at or immediately before the collision, the leading vessel and which the following vessel, is the question of fact chiefly contested on the trial; and this is deemed important in view of the rule, that, when one vessel is overtaking another, it is the right and duty of the latter, in general, to keep her course, and it is, in general, the duty of the overtaking vessel to avoid a collision. She is not absolutely prohibited passing, but she must see to it that she selects a time and place in which she can pass safely, if the other does nothing to thwart her endeavor.

It is obvious, that, as these vessels straightened on their courses down the North river, those courses were parallel. It is equally clear, that, in the wide space between the Battery and Governor's Island, there was abundant room for both, and that their curves around the Battery could have been preserved without possibility of collision, had the transverse distance between them been maintained. They might have moved on concentric curves, and could not then have come in contact. The Oceanus could not, with safety, have gone nearer to the shore; and it was, therefore, the duty of the Newport to keep off, and at a sufficient distance, upon her larger curve or swing, unless it is proved that, in coming down the North river, and before danger of collision arose, she had run so much ahead of the Oceanus, that the latter was in the relation to her of a vessel overtaking another. In my judgment, this is not established. The witnesses in behalf of the claimants, especially those on board of the Oceanus and on the Bristol, show the contrary. The officers of the Newport do not contradict them, as they did not see the Oceanus until the danger of collision was imminent. The view taken by witnesses on shore depends upon their positions relatively to the vessels and their courses when they observed them. Thus, the two men who stood near the lower end of the Battery by the flag-staff, saw the vessels after the curve around the Battery by the Newport began, and the vessels came in sight south of the old fort called Castle Garden. Now, it is obvious, that, as the Oceanus was coming down near the shore above Castle Garden, and the Newport was much farther out in the

river, the latter might come into the view of those men (looking along a straight line from the flag-staff to the southerly edge or side of Castle Garden) before they could see the Oceanus; and their most natural inference would be that the Newport was ahead. No such inference necessarily results from that observation, for, a line across the beam of the Oceanus might show that the Newport was at that moment behind the latter, and, having reference to the purpose of both to enter the East river, very considerably behind the latter.

Without discussing the testimony in detail, and without attempting, in this or any other manner, to harmonize all the testimony, I think it clear, that, in coming down the North river, the Oceanus was a little ahead, when she drew near Castle Garden, notwithstanding the Newport was the fastest boat. The shorter distance the Oceanus passed enabled her to reach that place before the Newport, on her longer course, reached the line of her beam. The Newport, (instead of preserving her lateral or transverse distance from the Oceanus, which, having the wide field towards Governor's Island before her, she could easily have done,) drew in upon the course of the Oceanus, in a curve crossing the bow of the latter. This caused the collision. This she had no right to do. Even if, when she began her curve, she was slightly ahead of the Oceanus, making her shorter curve, she had no right to turn in upon the course of the latter. Such a movement was at her peril. It could not be justified unless nor until the Newport had advanced so far that she could cross that bow without collision, if the Oceanus did nothing to prevent it. I do not say that the Newport was bound to maintain the same lateral distance from the course of the Oceanus at which she found herself when she straightened down the North river, but I do say, that, upon the evidence, there was abundant room to have kept at a perfectly safe lateral distance, and she should have done so. The excuse that her master and pilots did not see the Oceanus till the moment of the collision, if it does not aggravate, certainly does not relieve them from the imputation of fault in the navigation. Before they drew in so close to the shore, to shorten their curve around into the East river, it was their duty to see what vessels might be affected by it.

It is a mistake to say, that the moment the bow of one vessel is ahead of the bow of another, the burden of escaping collision is at once cast upon the latter: and it is especially true, that, in passing along concentric or nearly concentric curves, with a proximately common purpose or destination, one vessel has no right to cross the bow of the other unnecessarily, and so place the latter in danger. These views are one of the grounds of the opinion of the court below [Case No. 10,414], and I place my conclusion upon them, not, however, without expressing my concurrence in the reasoning there employed.

Let the libel be dismissed, with costs.